IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| JAMES ARMSTRONG,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>HAWAIIAN AIRLINES, INC.;<br>JOHN DOES 1-10; JANE DOES<br>1-10; DOE CORPORATIONS<br>1-10; DOE PARTNERSHIPS 1-10; and<br>DOE GOVERNMENTAL AGENCIES<br>1-10,<br><br>　　　　Defendant. | Civ. No. 18-00326 ACK-WRP |

## ORDER DENYING DEFENDANT HAWAIIAN AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT

For the reasons discussed below, Defendant Hawaiian Airlines, Inc's Motion for Summary Judgment, ECF No. 51, is hereby DENIED.

## PROCEDURAL BACKGROUND

On March 9, 2018, Plaintiff James Armstrong ("Plaintiff"), proceeding pro se, filed a Complaint in the Circuit Court of the Fifth Circuit for the State of Hawai`i against Defendant Hawaiian Airlines, Inc. ("Defendant" or "Hawaiian Airlines") and numerous Doe Defendants, asserting state law negligence claims and state and federal law disability discrimination claims. ECF No. 1-2. On July 17, 2018, now proceeding with counsel, Plaintiff filed a First Amended

Complaint in state court, ECF No. 1-4, that is substantially identical to Plaintiff's original Complaint. Defendant timely filed a Notice of Removal on August 21, 2018, averring that this Court has original jurisdiction over Plaintiff's claims under 28 U.S.C. § 1441(a). ECF No. 1 ¶ 24. Defendant's Notice of Removal asserts that Plaintiff's state law claims are completely preempted by federal law, specifically, Article 17 of the Convention for the Unification of Certain Rules for International Carriage by Air (the "Montreal Convention"). ECF No. 1 ¶ 23. As is discussed more fully infra, Plaintiff does not dispute that the Montreal Convention governs his claims.

On January 27, 2019, Plaintiff filed a Motion for Leave to File Second Amended Complaint, ECF No. 27, in which he sought to add another airline, Qantas Airways Limited, as a co-defendant. Magistrate Judge Richard L. Puglisi denied Plaintiff's motion on February 28, 2019, ECF No. 33. Plaintiff appealed the Magistrate Judge's order, ECF No. 36, but this Court, on April 16, 2019, issued an order affirming the Magistrate Judge's decision. ECF No. 42. On April 4, 2019, Plaintiff filed a Motion to Certify Qantas Airways Limited as Doe Corporation 1 pursuant to Hawai`i Rule of Civil Procedure

17(d). ECF No. 39. Magistrate Judge Wes R. Porter[1] issued an order denying that motion on May 14, 2019, ECF No. 48, which Plaintiff did not appeal.

On June 5, 2019, Defendant filed the instant Motion for Summary Judgment ("Motion"), ECF No. 51, together with a Concise Statement of Facts ("Def.'s CSF"). ECF No. 52. On July 9, 2019, Plaintiff filed his Memorandum in Opposition to Defendant's Motion ("Opposition"), ECF No. 56, together with a Concise Counterstatement of Facts ("Pl.'s CSF"), ECF No. 57, as well as Evidentiary Objections to one of the declarations attached to Defendant's CSF. ECF No. 55. Defendant filed its Reply on July 16, 2019. ECF No. 58. The Court held a hearing on Defendant's Motion on July 30, 2019.

## FACTUAL BACKGROUND

This case arises from an incident that occurred at Brisbane International Airport in Australia in which Plaintiff injured his arm in the course of retrieving five checked bags from a baggage carousel. The following facts are undisputed and are principally drawn from the evidentiary exhibits attached to the parties' CSFs.[2] Plaintiff has an extensive medical history

---

[1] This case was reassigned to Magistrate Judge Porter on May 8, 2019. ECF No. 47.

[2] The Court notes that many of the relevant facts are not listed in the parties' CSFs, and that many of the facts that are listed in the parties' CSFs mischaracterize deposition testimony and (Continued...)

involving a number of injuries.[3/]  Def. CSF ¶ 1; Defendant's

Excerpts of the Deposition of James Armstrong Vol. 1 ("Def. Exc.

of Pl. Dep. 1"), ECF No. 52-3, at 18:23-25, 19:1-25.  In 2013,

Plaintiff has suffered from tendinitis, fibromyalgia, and

arthritis throughout his entire body since at least 2003.

Defendant's Excerpts of the Deposition of James Armstrong Vol. 2

("Def. Exc. of Pl. Dep. 2"), ECF No. 52-3, at 152:19-24, 153:5-

8.  Plaintiff and his wife, Jeannette Armstrong ("Mrs.

Armstrong"), were passengers on an international Hawaiian

Airlines flight from Kaua`i, Hawai`i to Brisbane, Australia on

March 12, 2016.  Def. CSF ¶ 12; Def. Exc. of Pl. Dep. 1 at

85:17-19.  Plaintiff and Mrs. Armstrong checked five bags for

their trip.  Def. CSF ¶¶ 17-18; Def. Exc. of Pl. Dep. 1 at

66:21-23; 66:6-8.  For the last eight to ten years, Plaintiff

has requested wheelchair assistance within airport facilities

---

other evidence before the Court.  For these reasons, the Court
finds it appropriate to cite primarily to the evidence in
support of the undisputed facts rather than to the parties'
CSFs.

[3/] Defendant's CSF provides significant detail about Plaintiff's
medical history and past injuries, perhaps implying that these
pre-existing conditions and prior injuries are responsible for
Plaintiff's arm injury.  But Defendant's summary judgment
analysis does not utilize or mention many of the facts set forth
in its CSF, so the Court can only guess at their relevance to
the instant Motion.  Defendant is reminded that, pursuant to the
Local Rules of Practice for the United States District Court for
the District of Hawai`i, concise statements of fact "shall
reference only the material facts that are absolutely necessary
for the court to determine the limited issues presented in the
motion for summary judgment (and no others)."  See L.R. 56.1(c).

while traveling.  Def. CSF ¶ 10; Def. Exc. of Pl. Dep. 1 at 62:2–5.

Plaintiff requested and was provided wheelchair assistance for his March 12, 2016 flight to Brisbane.  Def. Exc. of Pl. Dep. 1 at 70:14–17.  Qantas Airways Limited ("Qantas") provides ground services for Defendant's passengers at Brisbane International Airport on an independent contractor basis pursuant to a Ground Handling Services Agreement.[4/]  Def. CSF ¶ 15; Declaration of Julie Carter ("Carter Decl."), ECF No. 52-2, ¶ 2.  Ms. Carter[5/] is currently Hawaiian Airlines's General Manager of Brisbane/Auckland Airport Operations, and was

_____

[4/] Neither party has filed with the Court the entirety of the Ground Handling Services Agreement (Plaintiff attached one page of the Ground Handling Services Agreement to his Evidentiary Objections, ECF No. 55-2 at 33).  Accordingly, the scope of the Ground Handling Services Agreement is unknown to the Court. This raises various issues, in particular, it is unclear whether Defendant can be liable for the actions of its independent contractor, Qantas.  Surprisingly, this issue is raised only tangentially in Defendant's Reply where it argues that Plaintiff's request to a Qantas employee cannot be imputed to Hawaiian Airlines.  Reply at 11–12.  The Court disregards this argument because it was raised for the first time in Defendant's Reply.  See L.R. 7.4.  The Court further notes that Defendant reiterated this argument at the hearing held on July 30, 2019. Also at the hearing, Plaintiff asserted that Qantas was Defendant's agent.  Again the Court finds that any issue of agency has not been properly briefed or argued, and accordingly declines to address this issue at this time (however, the Court does discuss infra how Qantas's responsibilities under the Ground Handling Services Agreement might be found by a jury to enlarge Hawaiian Airlines's policy with respect to wheelchair passengers).

[5/] Plaintiff has raised several objections to the Carter Declaration, which the Court addresses infra.

previously Hawaiian Airlines's Operations Manager of Brisbane Airport Operations. Carter Decl. ¶ 1. Pursuant to the Ground Handling Services Agreement, which was in place in 2016 at the time of Plaintiff's flight to Brisbane, Qantas provides wheelchair assistance to Hawaiian Airlines passengers arriving in Brisbane. Def. CSF ¶ 15; Carter Decl. ¶ 2.

Upon arriving in Brisbane, Plaintiff walked off the plane onto the jetway where a Qantas employee with a wheelchair awaited him. Def. Exc. of Pl. Dep. 1 at 70:14-17. Plaintiff walked to the top of the jetway and sat down in the wheelchair. Def. Exc. of Pl. Dep. 1 at 70:17-23. The wheelchair attendant pushed Plaintiff to the baggage claim where his checked bags could be retrieved, and parked Plaintiff's wheelchair adjacent to the baggage carousel. Def. Exc. of Pl. Dep. 1 at 70:23-24, 71:6. Plaintiff asked the wheelchair attendant if someone could help him retrieve his checked bags, and the wheelchair attendant replied "[t]here isn't anybody, mate." Pl. Dep. 1 at 70:23-25, 71:1-1. Plaintiff then asked the wheelchair attendant if a porter was available to help him retrieve his checked bags from the carousel, and also asked if the wheelchair attendant could call somebody to help. Def. Exc. of Pl. Dep. 1 at 71:1-4. The wheelchair attended responded that there was no porter available to help and that there was no one she could call to help Plaintiff retrieve his bags. Def. Exc. of Pl. Dep. 1 at 71:3-4.

The wheelchair attendant stood behind Plaintiff's wheelchair as the following events unfolded. Def. Exc. of Pl. Dep. 1 at 71:6-8. Mrs. Armstrong retrieved a luggage cart and parked it next to Plaintiff at the baggage carousel. Def. Exc. of Pl. Dep. 1 at 71:20-21. Plaintiff stood up and began offloading his bags from the carousel and placing them onto the luggage cart. Def. Exc. of Pl. Dep. 1 at 71:20-24.; Plaintiff stated that his back, knees, shoulders, and arms were "uncomfortable" as he retrieved the first four bags. Def. Exc. of Pl. Dep. 1 at 86:3-13. As Plaintiff retrieved the fifth and final bag, "something snapped in my forearm, which was my bicep tendon, I now know." Def. Exc. of Pl. Dep. 1 at 89:11-20. Upon injuring himself, Plaintiff cursed and "fell back in the [wheel]chair." Def. Exc. of Pl. Dep. 1 at 89:22. Plaintiff, pushed by the Qantas employee, and Mrs. Armstrong, who pushed the luggage cart, proceeded through customs. Def. Exc. of Pl. Dep. at 90:4-9. The Qantas employee left and Plaintiff and Mrs. Armstrong waited at a coffee shop for their son to pick them up from the airport. Def. Exc. of Pl. Dep. 1 at 90:9-12.

The principal dispute before the Court is whether an "accident" caused Plaintiff's arm injury—more specifically, whether the Qantas employee's rejection of Plaintiff's requests for assistance constitutes an "accident" under Article 17 of the Montreal Convention. Defendant argues that Plaintiff can point

to no evidence indicating that an accident occurred, and has offered evidence that Qantas (as Defendant's independent contractor) has never assisted passengers with checked bags at Brisbane International Airport due to "Occupational Health and Safety concerns." Carter Decl. ¶ 3. Defendant also argues that because federal regulations and Defendant's own company policy do not mandate such assistance, the wheelchair attendant's rejection of Plaintiff's request was usual and expected.

Plaintiff, on the other hand, testified at his deposition that he arranged for "curb-to-curb" service with Hawaiian Airlines, which, based upon his own experience and what Hawaiian Airlines employees have told him, includes wheelchair assistance as well as assistance with baggage.[6/] Def. Exc. of Pl. Dep. 1 at 82:2-5, 83:8-25, 84:1-25, 85:1. Plaintiff also testified that wheelchair attendants retrieved his checked bags from the baggage carousel after a Hawaiian Airlines flight to Sydney, Australia in 2014, and after subsequent Hawaiian Airlines flights to Brisbane in October 2016 and in April 2019. Plaintiff's Excerpts of the Deposition of James Armstrong Vol. 2

---

[6/] Plaintiff was asked six times whether Hawaiian Airlines has told him that curb-to-curb service includes assistance with checked bags, and he replied "Yes" the first five times. Def. Exc. of Pl. Dep. 1 at 83:8-25, 84:1-3, 84:7-17, 85:3-8. Finally, when asked for the sixth time "if anyone ever specifically said checked-in baggage," Plaintiff answered "No. Baggage." Def. Exc. of Pl. Dep. 1 at 85:11-16.

("Pl. Exc. of Pl. Dep. 2"), ECF No. 57-3, Pl. Exc. of Pl. Dep. 2 at 95:21–25, 97:1–17 (2014 flight), 108:2–23 (October 2016 flight), 120:18–25, 121:1–24 (April 2019 flight).[7]  More critically, however, the Ground Handling Services Agreement between Hawaiian Airlines and Qantas, as well as emails exchanged by Ms. Carter and another of Defendant's employees, all indicate that Defendant may have a policy of providing such assistance to wheelchair passengers through its independent contractor Qantas.

## STANDARD

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Broussard v. Univ. of Cal., 192 F.3d 1252, 1258 (9th Cir. 1999).

---

[7] Plaintiff also indicated that he received assistance with his checked bags on an Air New Zealand flight to Brisbane in November 2018 and on flights to Minneapolis in March 2015 and August 2015.  Pl. Exc. of Pl. Dep. 2 at 104:18–25, 105:1–9, 118:14–22.  Plaintiff's deposition testimony does not indicate what airline he used for his Minneapolis trips, but Hawaiian Airlines does not offer flights to Minneapolis.  Reply at 6; Declaration of Agrifina B. England, ECF No. 63-2, ¶ 4.

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586-87 (1986) (citation and internal quotation marks omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it

could affect the outcome of the suit under the governing law."
In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing
Anderson, 477 U.S. at 248).  When considering the evidence on a
motion for summary judgment, the court must draw all reasonable
inferences on behalf of the nonmoving party.  Matsushita Elec.
Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille
Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating
that "the evidence of [the nonmovant] is to be believed, and all
justifiable inferences are to be drawn in his favor" (internal
citation and quotation omitted)).  The court may not, however,
weigh conflicting evidence or assess credibility.  In re
Barboza, 545 F.3d at 707.  Accordingly, if "reasonable minds
could differ as to the import of the evidence," summary judgment
will be denied.  Anderson, 477 U.S. at 250-51.

**DISCUSSION**

**I.  Evidentiary Objections**

Plaintiff argues that the Carter Declaration was made
without personal knowledge and contains inadmissible hearsay
statements in violation of Federal Rules of Evidence 602 and
802.  "To survive summary judgment, a party does not necessarily
have to produce evidence in a form that would be admissible at
trial, as long as the party satisfies the requirements of
Federal Rule[] of Civil Procedure 56."  Block v. City of Los
Angeles, 253 F.3d 410, 419 (9th Cir. 2001) (citing Celotex, 477

U.S. at 324). With respect to evidence submitted by affidavit or declaration, Federal Rule of Civil Procedure ("FRCP") 56(c)(4) states the "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The question is whether the declarant's statements "lack[] the requisite proof of personal knowledge." Slade v. Baca, 70 Fed. App'x 446, 449 (9th Cir. 2003). Plaintiff's Objections are difficult to parse because he fails to explain the bases of his Objections and instead simply directs the Court to the complete transcript of the Deposition of Julie Carter ("Carter Dep."), ECF No. 55-2.

"Rule 56(e)'s requirements of personal knowledge and competence to testify" may be inferred from a declaration itself. Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990).[8/] "Personal knowledge may be inferred from a declarant's position" within a company. In re Kaypro, 218 F.3d 1070, 1075 (9th Cir. 2000) (citing Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 206 F.3d 1322, 1330 (9th Cir. 2000).

---

[8/] FRCP 56 was amended in 2010. The affidavit and declaration provisions that were formerly part of FRCP 56(e) were relocated to FRCP 56(c)(4). See Advisory Committee's Note to 2010 Amendment.

Ms. Carter is currently employed by Hawaiian Airlines as the General Manager of Brisbane/Auckland Airport Operations, and she was previously employed as Hawaiian Airlines's Operations Manager of Brisbane Airport Operations. Carter Decl. ¶ 1. Ms. Carter's employment with Hawaiian Airlines in Brisbane commenced on March 3, 2015. Carter Dep. at 3:21-23. The Court finds that Ms. Carter's positions within Hawaiian Airlines raise an inference that she has personal knowledge about the nature of Defendant's operations at Brisbane International Airport, including the services provided by Defendant's independent contractor, Qantas. See Edwards v. Toys "R" Us, 527 F. Supp. 2d 1197, 1201 (C.D. Cal. 2007) (concluding that a chief information officer's personal knowledge of payment card industry standards could be inferred by his position).

Further review of Ms. Carter's deposition supports the Court's finding. When asked what Ms. Carter is referring to when she testified that the information in her declaration is based on her personal knowledge learned in her capacity working for Hawaiian Airlines, she responded "My knowledge that I have been trained as per the procedures and policies of Hawaiian Airlines and of those of our vendor, Qantas, as per their contractual obligations" and "from working at the airport here and my training that I have received." Carter Dep. at 25:11-20, 28:14-16. Ms. Carter also testified that "Qantas do not lift

bags as part of their workplace health and safety," Carter Dep. at 32:17–18, and that a Qantas manager told her this information after Hawaiian Airlines first started using Qantas as its vendor.  Carter Dep. at 34:20–25, 35:1–7.  Ms. Carter again confirmed that she learned, as part of her training for operations manager, that Qantas, as Hawaiian Airlines's vendor, does not retrieve passengers' bags from the baggage carousel. Carter Dep. at 35:12–18.

The Court finds that the foregoing clearly establishes that Ms. Carter has personal knowledge of the facts that are set forth in her declaration.  Accordingly, the Court concludes that the Carter Declaration satisfies FRCP 56(c)(4), see Block, 253 F.3d at 419, and Plaintiff's Evidentiary Objections are thus overruled.

## II.  Defendant's Motion

The Montreal Convention governs "all international carriage of persons, baggage or cargo performed by aircraft for reward," and provides the exclusive remedy for international passengers seeking damages against airlines.  Convention for the Unification of Certain Rules for International Carriage by Air art. 1(1), May 28, 1999, S. Treaty Doc. No. 106–45, 2242 U.N.T.S. 309 [hereinafter "Montreal Convention"]; Narayanan v. British Airways, 747 F.3d 1125, 1127 (9th Cir. 2014).  Article 17(1) of the Montreal Convention reads in its entirety:

>The carrier is liable for damage sustained in case of
>death or bodily injury of a passenger upon condition
>only that the accident which caused the death or
>injury took place on board the aircraft or in the
>course of any of the operations of embarking or
>disembarking.

Montreal Convention art. 17(1); <u>Phifer v. Icelandair</u>, 652 F.3d

1222, 1223 (9th Cir. 2011).  To establish liability under

Article 17(1) of the Montreal Convention, a plaintiff must prove

the following elements: (1) there has been an "accident;" (2)

that caused the passenger's injury; and (3) that the accident

occurred while on board the aircraft or in the course of

operations of embarking or disembarking.  <u>Eastern Airlines, Inc.</u>

<u>v. Floyd</u>, 499 U.S. 530, 535–36 (1991).[9]

Under Article 21(2) of the Montreal Convention, the

airline is not liable for damages exceeding an amount equivalent

to 100,000 Special Drawing Rights[10] if it can prove the accident

---

[9] This case and many others cited herein refer to the Warsaw
Convention.  The Montreal Convention is the successor to the
Warsaw Convention of 1929.  <u>See</u> Convention for the Unification
of Certain Rules Relating to International Transportation by
Air, October 12, 1929, 49 Stat. 3000, 137 L.N.T.S. 11;
<u>Narayanan</u>, 747 F.3d at 1127 n.2.  Where, as here, a provision in
the Montreal Convention is substantively the same as its
equivalent provision in the Warsaw Convention, courts may rely
upon Warsaw Convention precedent.  <u>Id.</u>; <u>see also</u> <u>Phifer</u>, 652
F.3d at 1223 n.1.
[10] The Special Drawing Right is an international reserve asset
created by the International Monetary Fund ("IMF") that can be
exchanged for the currencies of IMF members.  <u>International</u>
<u>Monetary Fund</u>, http://www.imf.org/en/About/Factsheets/Sheets/
2016/08/ 01/14/51/Special-Drawing-Right-SDR (last visited July
25, 2019).  100,000 Special Drawing Rights is approximately
(Continued...)

was not due to its own negligence.  Kruger v. United Air Lines, Inc., 481 F. Supp. 2d 1005, 1008 (N.D. Cal. 2007); Montreal Convention art. 21(2).

It is undisputed that Plaintiff's injury occurred in the course of operations of disembarking from his flight to Brisbane, and thus it is undisputed that the third element for liability under Article 17(1) is met.  See Opposition at 14; Reply at 3.  Accordingly, the Court need only determine whether there is a genuine issue of material fact as to whether an "accident" caused Plaintiff's arm injury.

### A. Whether an "Accident" Occurred

The United States Supreme Court has defined "accident" under the Montreal Convention as "an unexpected or unusual event or happening that is external to the passenger."  Air France v. Saks, 470 U.S. 392, 405 (1985).  When determining whether an accident has occurred, the definition of accident "should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries."  Id.  Where there is contradictory evidence, "it is for the trier of fact to decide whether an 'accident' . . . caused the passenger's injury."  Id. But when the injury "indisputably results from the passenger's own internal reaction to the usual, normal, and expected

$135,000.  International Monetary Fund, https://www.imf.org/ external/np/fin/data/rms_sdrv.aspx (last visited July 25, 2019).

operation of the aircraft, it has not been caused by an accident." Id. at 405-06. "It is the cause of the injury that must satisfy the [accident] definition rather than the occurrence of the injury alone." Id. at 399 (emphasis in original). Thus, courts must conduct "an inquiry into the nature of the event which caused the injury" in order to determine whether an accident occurred. Id. at 407. "Any injury is the product of a chain of causes, and [the Supreme Court] require[s] only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger." Id. at 406.

The Supreme Court's definition of accident can be broken down into three parts: (1) an unexpected or unusual; (2) event or happening; (3) that is external to the passenger. Saks, 470 U.S. at 405. Defendant argues that Plaintiff cannot establish a triable issue of fact as to whether an accident occurred because his arm injury "resulted from his own internal reaction to the usual, normal, and expected operation of the aircraft." Motion at 25 (emphasis omitted). Plaintiff, on the other hand, argues that the wheelchair attendant's rejection of his requests for assistance with retrieving his checked bags was an accident that caused his arm injury. Opposition at 14.

With this backdrop in mind, the Court turns to the elements that make up an accident under Saks to determine

whether Plaintiff has met his burden to show there is a genuine issue of material fact as to whether an accident occurred.

### 1. "Event or Happening"

An "event or happening" can take the form of action or inaction. See Olympic Airways v. Husain, 540 U.S. 644, 653–54 (2004). In Husain, the Supreme Court ruled that an airline was liable under Article 17 when a passenger who was gravely allergic to cigarette smoke suffered a fatal asthma attack onboard a flight. Id. at 646–48. The passenger was seated only three rows in front of the plane's smoking section, and the passenger's wife asked a flight attendant if the passenger could move to a different seat. Id. at 647. The flight attendant rejected the wife's requests, notwithstanding being told that the passenger was gravely allergic to cigarette smoke. Id. The Supreme Court determined that the flight attendant's inaction constituted an "event" because "[t]he rejection of an explicit request for assistance would be an 'event' or 'happening' under the ordinary and usual definition of these terms." Id. at 654–55. Importantly, neither party in Husain challenged the district court's finding that the flight attendant's conduct was unusual or unexpected, and therefore the Supreme Court did not rule on that particular issue. Id. at 652.

Defendant's Motion assumes without argument that the event or happening at issue here is Plaintiff's retrieval of his bags from the baggage carousel. Indeed, Defendant repeatedly argues that it is usual, normal, and expected for airline passengers who have checked bags to have to retrieve those bags from a baggage carousel after the flight arrives at its destination. Undoubtedly, no liability under Article 17 could attach if an airline passenger injured his arm in the course of retrieving his checked bags from a baggage carousel where no unusual or unexpected event external to the passenger occurred. See Saks, 470 U.S. at 395 (no accident occurred where a passenger's deafness was caused by normal operation of the aircraft's pressurization system); Safa v. Deutsche Lufthansa Aktiengesellschaft, Inc., 42 F. Supp. 3d 436, 444 (E.D. N.Y. 2014) (no accident occurred where flight crew complied with Lufthansa policy and procedure in deciding to not divert a flight after a passenger suffered a heart attack). But Defendant oversimplifies the events of the instant case and focuses on Plaintiff's injury rather its cause.[11]

---

[11] Defendant appears to misunderstand the relevant inquiry, arguing in its Reply that Plaintiff's request to the wheelchair attendant "does not automatically transform Plaintiff's own internal reaction to the usual, normal, and expected operation of the aircraft into an 'accident.'" Reply at 12. Defendant mistakenly focuses on the "occurrence of the injury alone" rather than "the cause of the injury," which must satisfy the (Continued...)

Here, it is undisputed that Plaintiff requested, and was provided, wheelchair assistance in connection with his flight from Kaua`i to Brisbane in March 2016. It is also undisputed that upon arriving at the baggage claim in Brisbane, Plaintiff requested his wheelchair attendant to assist him, or to find someone to assist him, with retrieving his bags from the baggage carousel. Finally, it is undisputed that the wheelchair attendant rejected these requests for assistance. The wheelchair attendant's rejection of Plaintiff's requests for assistance is the proper focus of the accident inquiry.

In Caman v. Continental Airlines, Inc., the Ninth Circuit faced the question of whether an airline's failure to warn passengers of the risks of developing deep vein thrombosis ("DVT") during flight constituted an accident under Article 17. 455 F.3d 1087, 1091 (9th Cir. 2006). The Ninth Circuit ruled that an airline's "failure to warn [the plaintiff] of DVT is not an 'event' as that term is discussed in Saks and Husain. Rather, [the airline]'s failure to warn was an act of omission (inaction that idly allows an unfolding series of events to reach their natural conclusion) as opposed to an act of

_____

accident definition. Saks, 470 U.S. at 399. The definition of an Article 17 accident "should be flexibly applied," id. at 405, and a Plaintiff is required to prove only that "some link in the chain [of causes] was an unusual or unexpected event external to the passenger." Id. at 406. Here, that event is the wheelchair attendant's rejection of Plaintiff's requests for assistance.

commission (inaction that produces an effect, result or consequence) as in Husain's rejection of a direct plea for help." 455 F.3d at 1092 (emphasis in original).

Here, the wheelchair attendant in Brisbane refused Plaintiff's explicit requests for assistance with retrieving his bags from the baggage carousel. See 540 U.S. at 562. This was an act of commission, rather than omission, because it was inaction that produced an effect, result, or consequence. Plaintiff, a disabled wheelchair passenger, injured his arm while retrieving his checked bags as a consequence of the wheelchair attendant's refusal to assist him or find a porter to assist him. Had Plaintiff not asked for the wheelchair attendant's assistance, there would be no question that a mere act of omission occurred, and Plaintiff would not have a cause of action under Article 17. But here, the wheelchair attendant refused Plaintiff's requests for assistance, and under Ninth Circuit and Supreme Court precedent, there is an issue of material fact as to whether that refusal constitutes an event or happening. See Caman, 455 F.3d at 1092; Husain 540 U.S. at 562.[12]

---

[12] Defendant argues that Husain is "plainly inapposite" because Defendant had no duty to assist Plaintiff with retrieving his checked bags. Reply at 12–13. Defendant misreads Husain, the narrow holding of which is simply that refusing to assist a passenger who requests assistance is an "event or happening" for (Continued...)

Accordingly, there is a genuine issue of material fact as to whether the wheelchair attendant's rejection of Plaintiff's requests for assistance constituted an "event" or "happening" for purposes of Article 17.

### 2. "External to the Passenger"

The Supreme Court held that "[a]ny injury is the product of a chain of causes, and we require only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger." Saks, 470 U.S. at 406.  In Rodriguez v. Ansett Australia Ltd., a plaintiff developed DVT on a long flight.  383 F.3d 914, 915 (9th Cir. 2004).  The Ninth Circuit ruled that the passenger's development of DVT did not constitute an accident under Saks and, therefore, Article 17.  Id. at 918.  More specifically, the Ninth Circuit ruled that "the only event was [the plaintiff]'s development of the DVT.  Consequently, there was no event external to the passenger, let alone an unusual or unexpected event."  Id.

---

purposes of the accident inquiry.  540 U.S. 654–54.  Husain does not hold that any refusal to assist a passenger is an accident. Defendant also acknowledges that the "unexpected or unusual" inquiry was not before the Supreme Court in Husain, but then, inexplicably, proceeds to argue that Husain does not apply if an airline's conduct is in accord with industry standards and federal regulations.  Defendant's attempts to distinguish Husain fall flat.

Defendant does not specifically address the "external to passenger" element of the accident definition and instead reiterates its argument that Plaintiff's arm injury was caused by his own internal reaction to retrieving his checked bags from the carousel.  Motion at 23-25.  Relatedly, Defendant suggests that Plaintiff's arm injury was due to various pre-existing medical conditions.  Motion at 23-24.

In Prescod v. AMR, Inc., the Ninth Circuit affirmed the district court's finding that an accident occurred where an airline required a passenger to check a bag containing life sustaining medical equipment (which the airline subsequently lost), notwithstanding that the airline was told the bag should remain with the passenger at all times.  383 F.3d 861, 868 (9th Cir. 2004).  The passenger later died because she did not have access to the equipment in the bag.  Id. at 866.  When analyzing whether the event (requiring the passenger to check her medical bag) was external to the plaintiff, the Ninth Circuit stated "the 'unusual or unexpected event' was external to [the plaintiff], for the same reason the refusal of assistance in Husain was external to the decedent in that case:  In each instance, the preexisting illness was a contributing cause of death, but the airline's 'unusual or unexpected' action, external to the individual, was also 'a link in the chain of

causes' producing the injury." Id. (citing Husain, 540 U.S. at 653).

Here, there is evidence that the wheelchair attendant's rejection of Plaintiff's requests for assistance was external to Plaintiff because it was "a link in the chain of causes" that produced Plaintiff's arm injury. Husain, 540 U.S. at 653. To the extent Defendant argues that Plaintiff's arm injury was caused by his numerous pre-existing medical conditions, this argument fails because "that the plaintiff's own pre-existing condition was also a cause [of the plaintiff's injuries] does not matter." Prescod, 383 F.3d at 868. The accident need only be a link in the chain of causes producing Plaintiff's arm injury. Id. Accordingly, there is a genuine issue of material fact as to whether the wheelchair attendant's rejection of Plaintiff's requests for assistance was external to Plaintiff.

### 3. "Unusual or Unexpected"

Having determined that the wheelchair attendant's rejection of Plaintiff's requests for assistance was an "event or happening" that was "external" to Plaintiff, the Court must determine whether Plaintiff has met his evidentiary burden to demonstrate that the event was "unusual or unexpected" and, therefore, an "accident" under Article 17. The Ninth Circuit has stated that "[t]o determine whether [an air carrier]'s

actions were expected or usual, the jury would consider industry standards, best practices, expert medical testimony, and any other relevant evidence." Baillie v. MedAire, Inc., 764 Fed. App'x 597, 598 (9th Cir. 2019). The Court reiterates that the accident "definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." Saks, 470 U.S. at 405.

The Court finds that there is ample evidence in the record for a jury to conclude that the wheelchair attendant's rejection of Plaintiff's requests for assistance was unexpected or unusual. For example, Plaintiff's deposition testimony, the Ground Handling Services Agreement between Hawaiian Airlines and Qantas, and emails from Ms. Carter to another Hawaiian Airlines employee, all indicate that the wheelchair attendant's rejection of Plaintiff's requests for assistance with his checked bags was unexpected or unusual.

In his deposition, Plaintiff testified that when he left Honolulu on his flight to Brisbane, he asked Hawaiian Airlines "about my wheelchair and they go, Oh, yeah, curb-to-curb service, including bags, we help -- because I've asked and they always tell me, Of course we help you with your bags." Def. Exc. of Pl. Dep. Vol. 1 at 83:10-18. When asked "So has anyone ever told you that curb-to-curb service includes checked-in baggage?" Plaintiff responded "Yes," that Hawaiian Airlines

told him "curb-to-curb service is the wheelchair and baggage pick-up, and they take it from the curb and bring it out to the curb." Def. Exc. of Pl. Dep. Vol. 1 at 84:1-14. Plaintiff also confirmed that Hawaiian Airlines "specifically told you that curb-to-curb service includes checked-in baggage." Def. Exc. of Pl. Dep. Vol. 1 at 84:15-17. Plaintiff's deposition testimony is confirmed by Mrs. Armstrong's deposition testimony where she states that for this particular trip to Brisbane, Plaintiff requested a wheelchair and curb-to-curb service because "[w]e need help with baggage," and that Plaintiff requests these services whenever he flies. Plaintiff's Excerpts of the Deposition of Jeanette Armstrong ("Pl. Exc. of Mrs. Armstrong's Dep."), ECF No. 57-4, at 55:16-20, 56:1-7. However, the Court notes that Plaintiff was asked six times whether Hawaiian Airlines has told him that curb-to-curb service includes assistance with checked bags, and he replied "Yes" the first five times. Def. Exc. of Pl. Dep. 1 at 83:8-25, 84:1-3, 84:7-17, 85:3-8. Finally, when asked for the sixth time "if anyone ever specifically said checked-in baggage," Plaintiff answered "No. Baggage." Def. Exc. of Pl. Dep. 1 at 85:11-16.

Defendant argues in its Reply that the depositions submitted by Plaintiff establish nothing more than his subjective expectation that he would receive assistance with his checked bags in Brisbane, and that more is required to establish

an issue of material fact as to whether an accident occurred.
Reply at 4–5.  Defendant cites <u>Craig v. Compagnie Nationale Air France</u>, a 25–year–old unpublished table decision, in support of this argument.  1994 WL 711916 (Ninth Cir. Dec. 21, 1994).[13/] <u>Craig</u> involved a passenger who slipped on a pair of shoes after climbing over a sleeping man seated in an aisle seat as she attempted to return to her middle seat while the cabin lights were dimmed for sleeping.  <u>Id.</u> at *1.  The passenger did not turn on her overhead reading light or ask a flight attendant for assistance with returning to her seat.  <u>Id.</u>  The Ninth Circuit ruled that the only evidence the plaintiff offered was "her declaration in which she stated her understanding, based on past experience, that shoes are supposed to be stowed underneath seats or in overhead compartments and her surprise that in this particular instance they were not."  <u>Id.</u> at *3.  This evidence, without more, was not enough to survive the defendant's motion for summary judgment.  <u>Id.</u>

     Defendant's argument oversimplifies Plaintiff's deposition testimony.  Here, unlike in <u>Craig</u>, Plaintiff has submitted more than his understanding, based on past experience,

_____

[13/] The Court notes that, pursuant to Ninth Circuit Rule 36–3, the <u>Craig</u> case has no precedential value, and because the case was issued before January 1, 2007, it may not be cited to this Court.  The Court further notes the Ninth Circuit has never cited <u>Craig</u> in subsequent Montreal Convention decisions, indicating that the case may be an outlier.

that the wheelchair attendant's rejection of his requests for assistance was unusual or unexpected.  As the Court recited in detail, Plaintiff testified that he arranged for wheelchair and baggage assistance with Hawaiian Airlines for his March 2016 flight to Brisbane.  Considering this evidence objectively, a jury might well conclude that the wheelchair attendant's rejection of Plaintiff's requests for assistance was unusual or unexpected.

Defendant's argument that Plaintiff has only presented evidence of his own subjective expectations also fails because there is, in fact, additional evidence before the Court that indicates the wheelchair attendant's conduct may have been unusual or unexpected.  Specifically, the one page from the Ground Handling Services Agreement that is before the Court indicates that Qantas must "Make arrangements for stopover, transfer and transit passengers and their baggage and inform them about services available at the airport."  Carter Dep. Exh. 4, ECF No. 55-2 at 33 (emphasis added).  Critically, section 2.1.9 of the Ground Handling Services Agreement obligates Qantas to "Provide or arrange for . . . porter services, (on request and recharged to Carrier)."  ECF No. 55-2 at 33 (emphasis added).  Plaintiff asked the wheelchair attendant if there was a porter available to help him retrieve his bags, to which the wheelchair attendant responded there was no one to call.  Def.

Exc. of Pl. Dep. at 71:1-3 ("I asked her about a porter or
someone that -- a porter.  And she goes, There isn't any,
mate.").

Although the page of the Ground Handling Services
Agreement before the Court does not define "porter services," a
porter is generally defined as a person who carries baggage for
another.  See American Heritage Dictionary (5th ed. 2012)
("porter": "A person employed to carry burdens, especially an
attendant who carries travelers' baggage at a hotel or
transportation station"); Webster's New International Dictionary
(3d ed. 1961) ("porter": "One employed to carry baggage for
patrons at a hotel or transportation terminal").  A reasonable
jury might well conclude that the wheelchair attendant's
response was unusual or unexpected in light of Qantas's apparent
contractual obligation to arrange for porter services upon
request.  In particular, it appears that Defendant may have a
policy (beyond what is required by federal regulations) of
providing wheelchair passengers with assistance with their
checked baggage when such assistance is requested.  Thus, a jury
might conclude that any deviation from this policy is unusual or
unexpected, and therefore an accident under Article 17.

There is also email evidence that Qantas, as
Defendant's independent contractor, offers wheelchair passengers
assistance with their checked bags.  After Plaintiff complained

in October 2016 to Defendant about the incident that occurred in Brisbane, several emails were exchanged between Ms. Carter and Ron Alcantara, another employee of Defendant.  See Carter Dep. Exhs. 2 and 3, ECF No. 55-2 at 24–32.  Mr. Alcantara sent Ms. Carter an email dated October 20, 2016 summarizing the incident and asking what the procedures at Brisbane are <u>when a wheelchair passenger asks for assistance with retrieving his checked baggage</u>.  ECF No. 55-2 at 29.  Ms. Carter's response states "Our procedure in BNE is to offer <u>full assistance as requested/advised</u> by our WCHR passengers.  This would be provided by our Ground Handler Qantas."[14/]  ECF No. 55-2 at 26 (emphasis added).

There is also evidence suggesting that the wheelchair attendant's rejection of Plaintiff's requests for assistance may have been perfectly usual and expected.  Defendant has offered evidence that Qantas, as Hawaiian Airlines's independent contractor in Brisbane, does not assist passengers with retrieving their checked bags "due to Occupational Health and Safety concerns."  Carter Decl. ¶ 3.  Defendant also submits that the Hawaiian Airlines International Contract of Carriage,

---

[14/] Ms. Carter's deposition testimony qualifies her email to Mr. Alcantara.  Ms. Carter testified that by "full assistance" she meant that Qantas "would provide a wheelchair upon arrival at the aircraft door, take them through to the arrivals -- to the baggage claim area and clear customs and immigration and into the arrivals hall."  Carter Dep. at 54:7-22.

ECF No. 63-3, does not obligate Defendant to assist disabled passengers with checked bags.[15/]

Additionally, Defendant argues that Plaintiff has not submitted evidence of any law or regulation that would require Defendant to assist Plaintiff with his checked luggage. Motion at 25. This argument fails because Plaintiff is not required to submit such evidence. In fact, the Ninth Circuit reversed a district court that granted summary judgment to an airline on the ground that the plaintiff did not provide evidence that the airline's conduct violated Federal Aviation Administration requirements. See Phifer, 652 F.3d at 1224. The Ninth Circuit noted that "[t]he Supreme Court has suggested that a per se rule requiring a regulatory violation would be improper." Id.

---

[15/] At the hearing held on July 30, 2019, Defendant argued that the International Contract of Carriage is incorporated into each passenger's ticket, and that the International Contract of Carriage limits Defendant's liability to violations of international standards and regulations. Defendant did not raise this argument in its Motion or its Reply. Discussion of the International Contract of Carriage is limited to the Reply where Defendant argues only that the International Contract of Carriage excludes assistance with checked bags for disabled passengers. Reply at 9–10. In fact the International Contract of Carriage is silent on this point. Regardless, the case law is clear that Article 17 liability is not limited to statutory or regulatory violations. See Phifer, 652 F.3d at 1224. Accordingly, the Court disregards the argument Defendant raised at the hearing. Moreover, as the Court noted earlier, there is an issue of material fact as to whether Defendant's Ground Handling Services Agreement with Qantas establishes a policy requiring porter assistance with checked-in baggage for wheelchair passengers when such assistance is requested.

(citing Saks, 470 U.S. at 405);  see also Wallace v. Korean Air,
214 F.3d 293, 300 (2d Cir. 2000) (Pooler, J., concurring)
(noting that the Supreme Court in Saks, by defining "accident"
and urging that it be applied flexibly, "did not thereby
authorize courts to add more hurdles for a plaintiff to
overcome").  Nevertheless, laws and regulations are certainly
relevant to the inquiry of whether an accident occurred.
Phifer, 652 F.3d at 1224.

Defendant directs the Court to the regulations
promulgated under the Air Carrier Access Act ("ACAA"), see 49
U.S.C. § 41705; 14 C.F.R. § 382 Subpart G, as evidence that no
accident occurred because the regulations do not require
airlines to assist disabled passengers with checked bags.
Motion at 25.  The Court is skeptical of Defendant's
interpretation of the relevant regulations, available at 14
C.F.R. § 382.91.

Subsection (d) of the regulations provides "[a]s part
of your obligation to provide or ensure the provision of
assistance to passengers with disabilities in moving through the
terminal, (e.g., between the terminal entrance and the gate,
between the gate and aircraft, from the gate to a baggage claim
area), you must assist passengers who are unable to carry their
luggage because of a disability with transporting their gate-
checked or carry-on luggage."  14 C.F.R. § 382.91(d).

Subsection (d) indeed appears to exclude a mandate that airlines assist disabled passengers with moving their checked bags (unless the bags were gate-checked) throughout airport terminals.

However, Defendant ignores subsection (b) of the regulations. Subsection (b) provides, in relevant part, that "[y]ou must also provide or ensure the provision of assistance requested by or on behalf of a passenger with a disability . . . in moving . . . from the gate to the terminal entrance," and that "[t]his requirement includes assistance in <u>accessing key functional areas of the terminal, such as ticket counters and baggage claim</u>." 14 C.F.R. § 382.91(b)(1) (emphasis added). The ordinary meaning of "accessing baggage claim" includes not only entering the baggage claim, but making use of it. <u>See</u> American Heritage Dictionary (5th ed. 2012) ("access": "The ability or right to approach, enter, exit, communicate with, or make use of"); Webster's New International Dictionary (3d ed. 1961) ("access": "to be able to use, enter, or get near (something)").

Thus the plain language of 14 C.F.R. § 382.91(b)(1) seems to indicate that airlines must assist disabled passengers with making use of baggage claim areas, which would logically include assisting such passengers with retrieving their bags. Given the apparent contradiction between subsections (b) and (d)

of 14 C.F.R. § 382.91, the Court concludes that the regulations are ambiguous.

The Court, having carefully considered the parties' arguments and the evidence in the record, finds that there is a genuine issue of material fact as to whether the wheelchair attendant's rejection of Plaintiff's requests for assistance was unusual or unexpected, and therefore, whether an accident occurred. Indeed, a reasonable jury might find, based upon the Ground Handling Services Agreement obligating Hawaiian Airlines (through Qantas) to provide porter services upon request, Ms. Carter's email stating that Hawaiian Airlines's procedure in Brisbane is to provide full assistance with checked bags (through Qantas) as requested/advised by wheelchair passengers, and Plaintiff's testimony, that Defendant has a policy of providing checked baggage assistance to wheelchair passengers. A reasonable jury might thus conclude and that the wheelchair attendant's refusal to provide Plaintiff with such assistance was unusual or unexpected, regardless of the ACAA and the regulations promulgated thereunder. Although Ms. Carter's Declaration indicates that Hawaiian Airlines does not assist wheelchair passengers with checked bags, in cases where there is contradictory evidence, "it is for the trier of fact to decide whether an 'accident' . . . caused the passenger's injury."

<u>Saks</u>, 470 U.S at 405.  Accordingly, Defendant is not entitled to summary judgment on the issue of whether an accident occurred.

## B. Whether the Alleged "Accident" Caused Plaintiff's Injury

In <u>Saks</u>, the Supreme Court recognized that "[a]ny injury is the product of a chain of causes, and we require only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger." <u>Saks</u>, 470 U.S. at 406.  This link, however, must be a cause of the injury rather than the occurrence of the injury alone.  <u>Id.</u> at 399.  The Ninth Circuit applies proximate cause analysis in order to determine whether an accident cause a plaintiff's injury under the Montreal Convention.  <u>See</u> <u>Gezzi v. British Airways PLC</u>, 991 F.3d 603, 604 (9th Cir. 1993); <u>Prescod</u>, 383 F.3d at 869.

The parties only acknowledge in passing the causation element of Plaintiff's Montreal Convention claim, perhaps because it is quite obvious a jury might conclude, based on the evidence in the record, that the wheelchair attendant's refusal to assist Plaintiff with his checked bags was a "link in the chain" of causes resulting in Plaintiff's arm injury.  <u>Saks</u>, 470 U.S. at 406.

Plaintiff has suffered from tendinitis, fibromyalgia, and arthritis throughout his entire body since at least 2003. Def. Exc. of Pl. Dep. 2, ECF No. 52-3, at 152:19–24, 153:5–8.

After the wheelchair attendant rejected Plaintiff's requests for assistance with retrieving his bags, Plaintiff began to retrieve the bags himself.  It is unclear how exactly Plaintiff pulled the bags off the carousel, but it appears that he somehow swung or threw the bags from the carousel onto the baggage cart (rather than pulling the bags off of the carousel onto the ground and subsequently lifting them onto the cart).  Def. Exc. of Pl. Dep. 1 at 87:12-25, 88:1-10.  Plaintiff did not ask Mrs. Armstrong to retrieve the bags because she was suffering from a hernia at the time and she "had to be careful not to lift anything."  Pl. Exc. of Mrs. Armstrong Dep. at 44:6-25; Def. Exc. of Pl. Dep. 1 at 71:9-16.  Apparently, only one other family was at baggage claim at the time Plaintiff and Mrs. Armstrong arrived there.  Def. Exc. of Pl. Dep. 1 at 75:22-25, 76:1-3.  Conceivably, Plaintiff could have asked this other family for assistance.

The baggage claim is a "sterile, secure zone that is not open to the general public."  Carter Decl. ¶ 6.  After passengers retrieve their bags from baggage claim, they must proceed through customs.  Carter Decl. ¶ 7.  Although Plaintiff and Mrs. Armstrong were met at the airport by their son, he could not have assisted them with the bags since the baggage claim is not open to the general public.

While in Australia, Plaintiff saw a doctor primarily to address a pain in his knee. Def. Exc. of Pl. Dep. 2 at 19:9–15. Plaintiff also mentioned his arm pain to the doctor, who told him that he should see his surgeon in Hawai`i about it after returning home. Def Exc. of Pl. Dep. 1 at 96:11–17.; Def. Exc. of Pl. Dep. 2 at 19:11–13. Plaintiff saw three orthopedic surgeons regarding his biceps tendon. Def. Exc. of Pl. Dep. 2 at 26:6–8. He had surgery in June 2016 to repair his tendon, but apparently the surgeon performed the surgery incorrectly.[16/] Def. Exc. of Pl. Dep. 2 at 24:24–25, 25:1–23, 36:14–15. This resulted in his biceps tendon re-rupturing on two occasions, once in July 2016 and again in October 2016. Def. Exc. of Pl. Dep. 2 at 36:16–22. Prior to the June 2016 surgery, the pain in Plaintiff's left arm was not constant, but using his arm in certain ways caused significant pain. Def. Exc. of Pl. Dep. 2 at 13:21–25, 14:1–3. Now, after the botched surgery and two re-ruptures, Plaintiff suffers from significantly more arm pain than he did prior to the initial surgery. Def. Exc. of Pl. Dep. 2 at 14:3–12.

Based upon the recitation of the foregoing, the Court finds that Plaintiff has offered sufficient evidence from which

---

[16/] Plaintiff apparently initiated a medical malpractice lawsuit against this surgeon, but dropped that lawsuit to pursue his claims against Hawaiian Airlines. Def. Exc. of Pl. Dep. 2 at 51:9–17, 53:18–22.

a jury could reasonably conclude that the injury to Plaintiff's left arm was caused by the wheelchair attendant's rejection of Plaintiff's requests for assistance with retrieving his checked bags. Although Plaintiff's arm may have been susceptible to injury due to his tendinitis, and his arm injury may have been exacerbated by the botched surgery, a trier of fact might reasonably conclude that the wheelchair attendant's rejection of Plaintiff's requests for assistance was the proximate cause of Plaintiff's arm injury. See Prescod, 383 F.3d at 869–70 (seizure of plaintiff's bag containing life-sustaining medical equipment was the proximate cause of plaintiff's death); Chattopadhyay v. Aeroflot Russian Airlines, Case No. CV 11-00443 MMM (RZx), 2011 WL 13220279, at *8 (C.D. Cal. Aug. 17, 2011) (airline's refusal to allow a diabetic passenger to travel with his diabetic kit and its loss of that kit were links in the chain of causation producing his injury); Gezzi, 991 F.2d at 604–05 (presence of water on stairs used to exit aircraft was the proximate cause of passenger's fall down the stairs); Husain, 540 U.S. at 646 (airline's unusual and unexpected refusal to assist a passenger was a link in the chain of causation resulting in the aggravation of a passenger's pre-existing medical condition).

Accordingly, the Court concludes that Defendant is not entitled to summary judgment on the issue of causation.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is hereby DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, August 2, 2019.

_____
Alan C. Kay
Sr. United States District Judge

Armstrong v. Hawaiian Airlines, et al., Civ. No. 18-00326 ACK-RLP, Order Denying Defendant Hawaiian Airlines, Inc.'s Motion for Summary Judgment.